```
JM:SBK:TYH
F.#2009R01623
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | I N D I C T M E N T |
| -against- | Cr. No. 09-717 (S-1)(JFB) (T. 18, U.S.C., §§ 1343, |
| KAMAL Z. ABDALLAH, | 1348, 1349 and 2) |
| Defendant. | |

- - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

## THE DEFENDANT

1.  Defendant KAMAL Z. ABDALLAH was a resident of San Antonio, Texas.  From in or about March 2005 to November 2008, ABDALLAH served as the Chief Executive Officer, President and a member of the Board of Directors of Universal Property Development & Acquisition Corporation ("UPDV").

## THE COMPANIES

2.  UPDV was a Nevada corporation which, as of the date of the last annual report it filed with the United States Securities and Exchange Commission ("SEC"), had its principal place of business at 14255 U.S. Highway #1, Suite 209, Juno Beach, FL 33408.  UPDV held itself out as a company that was engaged in

2

the oil and natural gas acquisition, exploration, production, development storage, and distribution industry.  UPDV's common stock was registered under Section 12(b) of the Securities Exchange Act of 1934.  UPDV's common stock was publicly traded on the Over-the-Counter Bulletin Board market.

3.   Alphatrade was a Nevada corporation which, as of the date of the last annual report it filed with the SEC, had its principal place of business in North Vancouver, British Columbia, Canada.  Alphatrade held itself out as a digital media and marketing company.  Alphatrade's common stock was registered under Section 12(g) of the Securities Exchange Act of 1934.  Alphatrade's common stock was publicly traded on the Over-the-Counter Bulletin Board market.

## THE SCHEME TO DEFRAUD

4.   Defendant KAMAL Z. ABDALLAH agreed with others to create false demand for, and to manipulate the share price of, the common stock of UPDV and Alphatrade.

5.   ABDALLAH paid cash kickbacks to Eric T. Seiden in exchange for Seiden's fraudulent creation of false demand for UPDV common stock which, in turn, increased the share price of UPDV common stock.  After Seiden created the false demand for UPDV, ABDALLAH and an individual known to the grand jury who was working with ABDALLAH (hereinafter, the "Individual") sold UPDV common

stock that they owned, often at a price that was artificially increased due to Seiden's fraudulent activity.

6.  Seiden fraudulently created false demand for UPDV by inducing several stock brokerage houses to purchase a total of more than 200 million shares of UPDV.  Seiden telephoned each of these brokerage houses, falsely identified himself as an actual representative of a client of the broker in most cases, and placed orders to buy large blocks of UPDV common stock.  After the brokerage houses purchased the stock, Seiden ceased contact with the brokerage houses and did not pay for the shares that he had caused the brokerage houses to purchase.

7.  Prior to Seiden's calls to the brokerage houses, ABDALLAH and Seiden typically spoke on the telephone to discuss the buying activity Seiden expected to generate.  During these calls, ABDALLAH typically told Seiden the target price to which ABDALLAH wanted Seiden to move UPDV's share price through the fraudulent purchase activity.  At least one of these calls occurred while Seiden was in the Eastern District of New York.

8.  In furtherance of the scheme, Seiden placed calls to brokerage houses on the following dates and induced each of brokerage houses to buy a large number of shares of UPDV:

a.  On or about June 22, 2009, Seiden called a brokerage house located in New York and fraudulently caused it to buy approximately 10 million shares of UPDV.

    b. On or about June 25, 2009, Seiden called a brokerage house located in New York and fraudulently caused it to buy approximately 18 million shares of UPDV.

    c. On or about June 26, 2009, Seiden called a brokerage house located New York and fraudulently caused it to buy approximately 20 million shares of UPDV.

    d. On or about July 7, 2009, Seiden called a brokerage house located in California and fraudulently caused it to buy approximately 80 million shares of UPDV.

    e. On or about July 8, 2009, Seiden called a brokerage house located in New York and fraudulently caused it to buy approximately 95 million shares of UPDV.

   9. After his calls to the brokerage houses, Seiden advised defendant KAMAL Z. ABDALLAH about each of these purchases. ABDALLAH and the Individual sold UDPV shares that they owned typically after Seiden's fraudulent purchases inflated UPDV's stock price. In furtherance of the scheme, ABDALLAH and the Individual made the following sales of UPDV on the dates that Seiden fraudulently induced a brokerage house to buy shares of UPDV common stock:

    a. On June 22, 2009, defendant KAMAL Z. ABDALLAH sold approximately 5,370,300 shares of UPDV.

    b. On June 22, 2009, the Individual sold approximately one million shares of UPDV.

    c. On June 25, 2009, defendant KAMAL Z. ABDALLAH sold a total of approximately 4,050,000 shares of UPDV.

    d. On June 25, 2009, the Individual sold a total of approximately 10 million shares of UPDV.

    e. On June 26, 2009, defendant KAMAL Z. ABDALLAH sold a total of approximately 4,210,690 shares of UPDV.

    f. On June 26, 2009, the Individual sold a total of approximately 4.5 million shares of UPDV.

    g. On July 7, 2009, defendant KAMAL Z. ABDALLAH sold a total of approximately 2,419,700 shares of UPDV.

    h. On July 7, 2009, the Individual sold a total of approximately 7.8 million shares of UPDV.

   10. Defendant KAMAL Z. ABDALLAH also paid Seiden a kickback for creating the fraudulent purchase activity, which, in some cases, amounted to 25% of the proceeds ABDALLAH received from his sales of UPDV.

   11. Defendant KAMAL Z. ABDALLAH and Seiden also conspired to inflate the price of the common stock of another company, Alphatrade, in the same manner. During a telephone call on or about July 28, 2009, ABDALLAH asked Seiden to cause purchases of between 700,000 and 1,000,000 shares of Alphatrade in order to inflate the price of Alphatrade's stock by more than five times its value as of the time of the call.

6

COUNT ONE
(Conspiracy to Commit Securities and Wire Fraud)

12.  The allegations contained in paragraphs 1 through 11 are realleged and incorporated as if fully set forth in this paragraph.

13.  In or about and between June 2009 and August 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, defendant KAMAL Z. ABDALLAH, together with others, did knowingly and intentionally conspire:

a.  to execute a scheme and artifice to defraud persons in connection with the common stock of UPDV and Alphatrade, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property in connection with purchases and sales of common stock of UPDV and Alphatrade, contrary to Title 18, United States Code, Section 1348; and

b.  to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals,

pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349)

## COUNT TWO
(Securities Fraud)

14.  The allegations contained in paragraphs 1 through 11 are realleged and incorporated as if fully set forth in this paragraph.

15.  In or about and between June 2009 and August 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KAMAL Z. ABDALLAH, together with others, did knowingly and intentionally execute and attempt to execute a scheme and artifice   (a) to defraud persons in connection with the common stock of UPDV and (b) to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property in connection with purchases and sales of UPDV common stock.

(Title 18, United States Code, Sections 1348 and 2)

## COUNT THREE
(Wire Fraud)

16.  The allegations contained in paragraphs 1 through 11 are realleged and incorporated as if fully set forth in this paragraph.

17.  On or about July 28, 2009, within the Eastern District of New York, the defendant KAMAL Z. ABDALLAH did

8

knowingly and intentionally devise a scheme and artifice to defraud purchasers of UPDV shares, and to obtain money and property from those purchasers by means of materially false and fraudulent pretenses, representations and promises.

18. For the purpose of executing the scheme and artifice, the defendant KAMAL Z. ABDALLAH transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, specifically, a telephone call from the Eastern District of New York to the defendant KAMAL Z. ABDALLAH in Texas regarding manipulation of UPDV and Alphatrade share prices.

(Title 18, United States Code, Sections 1343 and 2)

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK