Kamal Abdallah
Reg. No. 52139-280
MDC Brooklyn
POB 329002
Brooklyn, New York 11232

Mary Ann Betts
Alfonso M. D'Amato United States Courthouse
2nd Floor
Federal Plaza
Central Islip, New York

Via Email

Ref: United States v. Kamal Abdallah

Criminal Docket No. 09-717 (JFB)


Ref: PSR                                                                                        August 15, 2011


Dear Ms. Betts,

Below, please find my comments to the PSR that was issued on 7/13/2011.

Paragraph 6: It is wrongly concluded that I conspired with Eric Seiden "to place fraudulent buy orders" when the evidence at trial and the notes of the FBI Agent (Form 302) clearly support the fact that I did not know that Seiden was placing fraudulent orders, until- in light of evidence most favorable to the government- Seiden allegedly "told" me on 7/15/2009 how he had conducted his trades on 6/22, 6/25, 7/07, 7/08/2009. Therefore, I did not conspire with him to place a trade prior to 7/15/2009. As for the

1

phone calls after 7/21/2009, he was already an informant and I could not have conspired with an informant.

Paragraph 7: It is stated that UPDV was "a relatively low trading volume". If you examine the testimony of Mr. James Paper of Dinosaur Securities, you will see that UPDV was not a thinly or low trading stock.

Paragraph 8: It is stated that "Abdallah sold his (UPDV) stock typically after Seiden's fraudulent purchases inflated UPDV's stock price". However, the records from the trial show that when Seiden got involved in the UPDV stock, the stock traded at Approx .0045 and his fraudulent actions caused the stock to deflate, not inflate. Therefore, the facts in this paragraph are incorrect.

Paragraph 11: It reads " to go do it for me", which did not mean start selling UPDV stock as suggested, but rather go transfer the money to me (or to Seiden).

Paragraph 15: It is not disclosed that at that time I did not know of Seiden's scheme, as the court records and the agent's notes have revealed.

Paragraph 9, 10, 11, 12, 13, 14: It is not mentioned that Seiden made these calls from Florida to Manhattan or SDNY, with the exception of Paragraph 13, where the call was between Florida and California.

Paragraph 16: It is not stated that all the listed phone calls were between Florida and Texas.

Paragraph 17: I did not sell any stock on 7/07/09. Therefore, the table is incorrect.

Paragraph 18, 19, 20: It is not stated that on 7/21/2009, Seiden was assisting Federal Agents, and was acting as an FBI informant, and the call was from Florida to Texas.

Paragraph 21, 22, 23, 24: Again, it is not stated that Seiden was acting as an informant and these calls were staged calls.

Paragraph 27, 28: This is a very serious and highly prejudicial statement that is being made, when it is stated that I stole $4,000,000 From Geer.  You will find that the court transcripts show that, prior to resigning from UPDV, I loaned the company over $7,000,000.  I would like to believe that you have done your own, independent research, and have not relied on the governments allegations in your report, which is biased and has an interest in increasing the guidelines. It shocks me that such disregard to the truth is implemented in a statement like this made on the PSR.  I would like to respectfully remind you that the case and the trial were not about the $4,000,000. The jury did not decide on the $4,000,000, nor was it asked to decide on this matter. By the same deceptive manner, the government has strived to confuse you and the Jury, and has painted a horrible picture to them.

Paragraph 29: You have not included that these losses happened before I joined Seiden's conspiracy or before I knew how he fraudulently placed his orders. I copied you on a letter dated July 5, 2011 in which I explained that the relevant conduct under 2B1.1 Application note 2 does not apply to me.

Paragraph 31: My holdings in UPDV are not stated correctly.

Paragraph 32: I paid Seiden $45,000.00

Paragraph 33: The main reason for hiring Seiden was to sell or distribute shares that I owned to institutional investors (to which Seiden claimed he had the means) for the purpose of raising money to pay off Sheridan and acquire the assets of UPDV in a new Public company called Geopulse.

Paragraph 36, 37: I strongly disagree with the losses in paragraph 36 and 37, it is highly prejudicial.

Paragraph 37: If Seiden employed his knowledge and expertise of the brokerage business and impersonated Hedge Funds, at a time in which I did not have knowledge of his doings, nor was I a part of his conspiracy, then is it fair to enhance me by 2 points for his knowledge and expertise?

Paragraph 38: I disagree that I testified falsely.

Paragraph 44: Factual mistakes about Sheridan and Heartland, the government provided a correction:

Paragraph 45: I loaned the company (UPDV) $7.2 M and not invested $7.2 M, though I converted some of the loans to equity at a later stage but not all.

4

Paragraph 47: I paid Seiden over time $45,000.00 and not in a single transfer as stated.

Paragraph 50: I disagree with the whole figure and it should be Zero.

Paragraph 51: I did not employ any sophisticated scheme.

Paragraph 54: I disagree

Paragraph 55: the math should be 7

Paragraph 57: I disagree

Paragraph 58: I disagree

Paragraph 61: I disagree

Paragraph 62: the math should be 7

Paragraph 64: I disagree

Paragraph 65: I disagree

Paragraph 68: I disagree

Paragraph 69: The math should be 7

Paragraph 73: The math should be 7

Paragraph 75: The math should be 7

Paragraph 77: The math should be 7

Paragraph 82: No electronic monitoring

Paragraph 108: I disagree that gambling is "speculative" business.  Gambling is gambling, no more no less.

In conclusion:

1. The report is highly prejudicial with the inclusion of the $4,000,000 in the calculation. Please do not take this a personal attack, or that I am in any way trying to tell you how to do your job. This is merely about the substance of the report. It is clear that by including the $4,000,000 in the losses, there is a manipulation and attempted distortion by the government, who hadn't previously raised the issue, and is a manifestation of their bad intentions and disregard to human liberty.

2. The fact that the dates of the trades and the sequence of events are not included, and the fact that you precluded the 7/15/2009 meeting in San Antonio where Seiden allegedly informed me of his fraudulent scheme (in light of the evidence most favorable to the government), as well as the fact that it was not explicitly stated that all the trades in UPDV stock took place before I "joined" Seiden's conspiracy, are all highly prejudicial and damaging.

3. The fact that it is not mentioned that it was Seiden's scheme, which started when he stole the list of Hedge Funds in early 2008 and executed his scheme as early as October of 2008, 9 months before I met him, with five other individuals and dozens of other companies is highly prejudicial and damaging.

4. The fact that it is not disclosed that on Form 302, when Seiden was interviewed by the FBI, and clearly stated that I did not know how he conducted the trades is highly prejudicial.  This is a statement that was later confirmed by Tom Reid, the individual who introduced me to Seiden.  It was also confirmed by Roger Kainth, who was interviewed by the FBI, and the US Attorney who later advised Mr. La Russo that there is favorable information to go and get.  All of this is in violation of the Brady rules.  On the other hand, you have chosen to include that I allegedly "stole" $4,000,000 which has nothing to do with the stock trades, or even this case.

Thank you for your time in this matter, and if you would like to meet for further clarification, or to redo the report, please let me know.


Respectfully submitted,

/S/

Kamal Abdallah

Cc David Woll via mail

Cc Robert LaRusso via email