Kamal Abdallah

Reg. 52139-280

MDC Brooklyn

POB 329002

Brooklyn, New York 11232

United States District Court

Eastern District Of New York

------------------------------------------X

United States of America

        Respondent

                                    Docket No 09-717-(S-1)(JFB)

    V

Kamal Abdallah

        Defendant

------------------------------------------X

<u>Objections to parts of the Presentencing Report</u>

<u>The PSR report was prepared on July 13, 2011 by: Ms. Mary Ann Betts</u>

1

The defendant, acting Pro Se, respectfully objects to parts of the PSR. The defendant will point out mistakes published in the report and move to strike parts of the PSR due to relevancy and accuracy, and will also offer comments.

In Paragraph 4, it reads: "Count 3 charges that between June 2009 and August 2009, the defendant committed wire fraud by placing a telephone call from Florida to a brokerage house in New York, in an effort to defraud purchasers of Universal Property Development Corporation shares, in violation of 18 U.S.C. 1343."

Comments and Objections: This statement is inaccurate. The defendant never made any calls from Florida to a Brokerage house in New York, NY. It was Seiden who made the calls to Brokers.

In paragraph 3, it reads: "Count 2 charges that between June 2009 and August 2009, the defendant and others committed securities fraud in the purchase and sales of Universal Property Development Corporation and Alphtrade common stock, in violation of 18 U.S.C. 1348."

Comments and Objections: The Government stated in their opposition that the defendant is charged with securities fraud based on the July 28, 2009 phone call, and not the purchase and sales of UPDV common shares.

The defendant moves that the court Strike out the report reference to the $4,000,000 (Geer Money) that is included in paragraphs 27, 28, 36 and 37. The defendant bases his motion on the fact that the $4,000,000 is not relevant conduct and is not part of the instant case. Furthermore, in that report, the Probation officer published inaccurate facts that were not supported in trial: 1) The defendant stole- here

2

the defendant asked the management of Geer/Continental to transfer the money to UPDV acct.  Hence the defendant did not have signing authority on Geer/Continental bank accounts. 2) There is no evidence at trial to support that the defendant used his position as a board member to take $4,000,000 from Geer account, nor did the defendant steal the money as claimed. (See United States v. Rutkoske, 506 F.3d 170, 179 (2Cir. 2007); See also Dura Pharmaceuticals Inc. V. Broudo, 544 U.S 366, 125 S. Ct 1627 and United States Olis, 429 F. 3d 540).

The defendant asks the court to examine paragraph 29, which indirectly relates to the Government forfeiture order. The Probation officer outlines the impact on the victims and it totals $224,072.18.  Here, the Probation officer takes a different approach to decide the losses which is based on each and every broker's loss. Meanwhile, the Government approached it differently based on the stock that defendant and Mr. Kainth sold. The two different approaches underscore the defendant's assertion that there is a variance in the instant case.  This is whether the case is based on deceiving brokers or the case is based on manipulation of a stocks. Hence, in the government forfeiture, it holds the defendant responsible for approx $61,000 of his trades and Approx $100,000 of Mr. Kainth's trade.  Court transcripts showed that the defendant's cost of his UPDV shares was approximately $55,000, which was sold for $61,000, netting a profit of $6,000.  The defendant does not know the cost basis for Mr. Kainth's Stock.

The defendant raises objections to the "Offense Level Computation" which is paragraph 48 through paragraph 77, excluding paragraphs 49, 56 and 63 which outline that the base offense level is 7 on each. The defendant raises objections to paragraphs 50, 57, and 64.  These three paragraphs allude to the defendant's "intended loss of

3

$4,000,000" (the Geer money). Without being repetitious the $4,000,000 is not part of the instant case, nor it is relevant conduct, and the probation office mistakenly (in the defendant's opinion) included it in the computation. Therefore, the defendant moves to strike 18 points of each count, and it should not be included in the computation.

The defendant raises objections to paragraph 51, 58, and 65. The defendant did not use any sophisticated means. In fact, the PSR points to Seiden as the person who employed sophisticated means. The defendant was never a broker or held any licenses. Therefore, the defendant moves to strike out the 2 points for each offense.

The defendant raises objections to paragraphs 54, 61, and 68. The PSR assumes that the defendant obstructed justice and perjured himself during trial. The defendant never denied that he hired Seiden to create legal demand for UPDV common stock. Therefore, he did not perjure himself and no adjustment should be considered.

In order to explain whether or not the defendant perjured himself at trial, one needs to understand the nature of IR business. IR stands for Investors Relation, which most public companies engage in. The three simple purposes of IR are 1) to increase the shareholder base of a company (add new shareholders), 2) to provide information about the company and its operations, and 3) other services.

In the instant case, the defendant hired Seiden to do IR work, specifically to target institutional investors, i.e. Hedge Funds. Hedge Funds, unlike retail investors (individual Investors), tend to make their investment decisions based on a number of criteria, including liquidity, price, and fundamentals of the business among other things.

4

And since all hedge funds are accredited investors, knowledgeable of the market and the business, there is no need for extensive disclosures.

Seiden stated during trial that the defendant did not know that Seiden impersonated hedge funds, and these new shareholders are not real. So the defendant did not perjure himself.  Seiden also said that, at a meeting in San Antonio, he informed the defendant of the method of his false demand. Seiden went on to say, under oath, that he (Seiden) asked the defendant to provide him with new brokerage houses, and a new hedge fund list so that he can continue the impersonation and his false demand scheme (TR..448). Here, the defendant denies that this ever took place. To question the jury's verdict, if Seiden is asking Abdallah to provide a list of hedge funds and brokerage houses for Seiden to impersonate, and if Abdallah owns stock and owns a list of hedge funds with their information at brokerage houses, why then would the defendant need Seiden? Seiden's story does not add up, and the defendant never perjured himself at trial.

The jury decided to believe Seiden's side of the story even though it was Seiden who lied to the government and committed further fraud on timeshare owners after he signed a plea with the government promising not to commit additional crimes. It is evident from the trial that Seiden would do anything to save his skin, including lying again to the jury.

Based on the aforementioned objections the Adjusted Offense Level in paragraphs 55, 69, and 77 should be Level 7.

The defendant objects to paragraph 123, which states that the defendant failed to provide a Financial Statement.

Comment: The defendant received a form from the probation officer during the interview and filled it out.  However, during the time that the PSR report was being prepared, around the middle of May, 2011, the defendant elected to represent himself Pro Se.  The probation officer never contacted the defendant. The PSR was published around July 13, 2011, and the only copy that the defendant received was copy that Mr. LaRusso delivered to him toward the end of July, 2011. During that time, the defendant filled out the personal financial statement, and nobody asked for it.  It is available and it could be delivered once the defendant is given instructions on where it should be sent.  The defendant has nothing to hide.

Finally, the defendant thanks the probation officer for the extensive work that she employed in putting together this report.

Respectfully submitted,

/S/

Kamal Abdallah


CC: David Woll ( via mail)

CC: Robert LaRusso ( via email)

CC: Ms. Mary Ann Betts (via email)